The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 423-0776 in Ray E.N. Show for the appellant, Mr. Mondami, and for the appellee, Mr. Escalera. Is that pronounced correctly, sir? Yes. Okay. So, Mr. Mondami, at this time, you may proceed, sir. Thank you, Your Honor, and may it please the court and counsel, the trial court's order in this case terminating the respondent's parental rights should be reversed. That finding was based on unfitness findings as to the respondent's reasonable progress to the return of the child as well as to her failure to maintain a reasonable degree of responsibility for the minor. Finally, it was also based upon a finding that she failed to protect the minor from an environment injurious. As set forth in the brief, the trial court's findings as to progress and responsibility were contrary to the manifest weight of the evidence. As to both of those issues, the trial court's finding was placed primarily on the respondent's failure to remove her paramour from her life. But when you look at the evidence that was before the court, the respondent first as to progress certainly demonstrated reasonable progress. She maintained constant contact with her caseworker. She was involved and appeared at, I think, only missing one court appearance out of, I think, 35. She was engaged in substance abuse treatment successfully. She went through and engaged in counseling services. Even though some of that may have been traumatic, she maintained her participation and activity in counseling. The issue came down to the presence of Mr. Larson in her life. And as to that, what she was told on a regular basis was that if he engaged, that she could, in fact, receive her children back. And she worked at that and eventually got Mr. Larson to participate in services, engage in services. And so, based upon that, the finding that she failed to make reasonable progress is contrary to the manifest weight of the evidence. The argument is similar as to responsibility. The court again- I have a question. This court has written repeatedly that the criterion regarding judging whether someone has made reasonable progress is whether the person will make such progress so that the trial court will be able to return the child to that person's custody in the near future. Has your client met that criterion? I believe she did, Your Honor. With the participation of the paramour in services that was engaged at the time that the court terminated her rights, I think that his engagement in those services established for the court's purposes, that it could return the my client. And the fact that during this process, he had another child of his own in his care that was not removed from his care, both of those things suggest that the court could, in fact, have returned the child to her within a short time period at the time that the termination was entered. As to responsibility, as I was saying, it's a similar issue. The court found that it had essentially provided her with the choice of staying with the paramour or receiving her child back. And I think the record doesn't quite establish that. What she was, in fact, told over and over was that if he engaged, she could receive the child back as recently as the month before the permanency hearing where the decision to change the goal was made. She was told there's still time. Beg your pardon, that happened a few months earlier, but at that permanency hearing prior, she was told that there weren't any issues with her paramour's engagement in services. Based upon that, based upon the fact that she was told that he needed to engage in services and there was still enough time, it's difficult to see how her responsibility, or at least her efforts at demonstrating responsibility... Are you citing counsel evidence presented at the permanency hearing? I'm sorry, your honor? You were making reference, it sounds to me like, to evidence presented at one of the permanency hearings? I was actually making reference to the court's findings at that time. What's the relevancy of those? Well, when the determination of responsibility is in light of the circumstances, was her demonstration of responsibility reasonable? When the court is saying, I don't have any issues with his engagement in services, then I think that goes to the reasonableness of her efforts at maintaining responsibility. This court has written, I think, again repeatedly, that not only evidence, but remarks by the trial court of permanency review hearings don't count, and indeed aren't even admissible at the witness hearings, where the evidence must be presented in accordance with all of the rules, former rules of the evidence that apply at a permanency review hearing, just like at a dispositional hearing. So why should this court address anything that wasn't presented by way of evidence at the fitness hearing, at which the trial court made its determination? Your Honor, I think what I'm suggesting is not that the court's comments at the permanency hearing were evidence of her demonstration of responsibility. It is that when this court is evaluating her efforts to show responsibility, her continued efforts, and in fact, her successful efforts at getting her paramour to engage in services, which I believe was shown by testimony at the termination hearing, that's what I'm pointing to. Counsel, I want to make it clear. I wasn't sure what you were saying, but it seems to me we're reviewing the trial court's determination that the evidence was sufficient at the fitness hearing to find that your client was an unfit parent to terminate parental rights, and in reviewing that, we should review only the evidence presented at the fitness hearing, and you seem to be going beyond that to make reference to matters or remarks that occur at the permanency review hearing, and I don't think any of that's visible. Your Honor, again, I don't think that my point in referencing those remarks by the trial court is simply as to the respondent's demonstration of responsibility. The other evidence of her the remarks coming out of the prior permanency hearings, it's not, again, not for an evidentiary basis that I'm suggesting that it was there, but it was in light of those comments, her efforts should be deemed to be reasonable. So we should argue we're supposed to consider comments made by the court at the permanency review hearing? Only to the extent that they bear on the reasonableness of the respondent's actions. This was not addressed in the briefs, but I would say also that I think the permanency hearings, we're not addressing, I didn't take issue with any of the findings that the court made at permanency hearings, but those are all part and parcel of an unfitness finding, or at least a court addressing the issue of progress in the on the issue before this court as to whether the trial court erred at the conclusion of the fitness hearing, citing that your client was not fit under the adoption act. Your Honor, I think as to that, it's not the evidence or the findings that the court made, but those comments in light of, in light of those comments, my client's actions. Is this court limited to reviewing the evidence presented at the fitness hearing, counsel? In terms of whether or not there was sufficient evidence? I think that calls for a yes or no answer. I don't understand. Are we reviewing the evidence presented at the fitness hearing? Is that a limitation or are we, are the rules of evidence somehow broader than that? No, I think the court's correct that the fitness hearing is what this court is reviewing. Well, then why do you cite what remarks were made by the court of permanency review hearing or other evidence may have been presented there? Because again, when you're, we're talking about whether or not the respondents actions were relevant, take note of the comments made to the respondent and the extent to which those reflect her demonstration or her lack of demonstration of responsibility. Are they relevant? You premised it on the extent to which they're relevant. Go back to the question. Are they relevant? I believe so. So in other words, your argument is, at least in part, we may reverse the trial court based not just on evidence presented at the fitness hearing, but on remarks that the trial court may have made at the permanence review hearing. Is that correct? I would say that the, the evidence that the court is considering is that it's presented at the unfitness hearing. But the, the determination of whether or not a party's actions are reasonable, I think could encompass the record as a whole in terms of how the court's going to find what the record is. As a whole, you mean evidence beyond that, which was presented at the fitness hearing at which the trial court made its determination. I think, Your Honor, maybe the distinction that I would draw is that the evidence that's presented at the unfitness hearing as to the facts before the court is what the court is limited to. However, when making a determination of reasonableness, I think this court can certainly look at the record as a whole to make that determination. Go ahead. Very well, thank you, Your Honor. As it's set forth, I think that with regard to unfitness as to the environment injurious, I think unfortunately for the respondent and maybe for others as well, but the case of CW I think controls and that's why the respondent did not contest that ground of unfitness. Excuse me if I may, but you would agree then that as to the finding that as to the parent being unfit, any one ground is sufficient to enter in a finding of unfitness, correct? That's correct. And so you are conceding that that ground was properly before the court and the court's determination there is then controlled by CW? That's correct, Your Honor. Whether I have an issue with it or not, I don't think that this court can deviate from the finding or the holding of CW. And you don't find anything about this case distinguishable from NRA CW? I mean, there's always the minor facts that I think can be distinguished, but the issue here I think is that in the way that CW was worded, whether or not there is an argument that could be made about that environment injurious, the facts before the court were uncontested, in fact. And if those weren't contested at the trial court level, I'm not sure that I can try to argue differently before this court. Thank you. Then turning to the issue of best interest, and I think as the court in CW alluded, while there parental rights or at least finding them unfit based upon the environment injurious, and then inviting them and indeed requiring them to participate in services and make efforts to correct those conditions, I'm sorry, to correct those conditions, that while that may not bear on unfitness, at least as the statute is worded, those efforts do bear on the issue of best interest. And as set forth in the brief, I think here, when considering all of the statutory factors, the respondent's substantial efforts to correct the issues that led to the child coming into care and the substantial efforts to address the issues that created the environment injurious should stand and should show that it is in fact in the child's best interest or was not in the parental rights. I think that is essentially the argument that's before this court. And unless there are any other questions, I'd reserve any additional time for rebuttal. Thank you, counsel. Thank you, your honor. Mr. Piscolaro, you may argue on behalf of the state. Thank you, your honors, and may it please the court. Good afternoon, counsel. As already, counsel has already conceded the issue. There's really no, as we already alleged in our brief, he conceded in his original brief and then in his reply brief. So as Justice Leonard already said, you know, one ground is sufficient. So, but just in case, there is other issues. As counsel has already stated, the issue was that Larson, who was the paramour in this case, continued to reside with the respondent and he only made, he only started progress. He started making some steps until March 2023. This petition was filed in May 21st. I'm going to give this court a timeline, right? So in May 21st, 2021, the petition was filed and August is when respondents stipulated that the minor was neglected and she was unfit. And then the hearing itself was on July 27th, 2023. So for a year and seven months, the paramour in this case did absolutely nothing. So, and when the petition was filed in July, one of the first nine months that was alleged was from July 15th, 2022 to April 15th, 2023. So by that time, the state had already, or, you know, as it alleged in this petition, that according to CW, that which it's allowed to do, they felt that respondent had not made any reasonable progress and any responsibility towards returning the children or returning the child to the minors or to the respondent's care in the near future. So with that being said, if there's no questions regarding unfitness as to best interest, even respondent agrees that there was evidence that presented, that was presented during the hearing that favored termination and all the state, as this court is well aware, all the state had to do was prove by profoundness of the evidence. And with all the evidence that was produced, the minors called the bond. The minor was in their care since the beginning, or from what I remember from most, the majority of the case, most, most of the minor's life was in foster care with these specific parents. So other than that, the state understands that there was a bond, you know, obviously there's always a bond between the parents and the minor, the biological parents, but over a course of having not complete or, well, respondent did complete a good portion of her services, but again, the elephant in the room was she continued living with the person who abused her and you just cannot have a minor live with that person when there's domestic abuse issues. So within a year and seven months, and then obviously being in control or in, in a foster care for that long, the child deserves permanency. And with all the other factors of the best interest factors, the state it's the state's position that we proved by profoundness of the evidence that it was in the best interest of the minor's child that respondents parental rights be terminated. So if there's any questions regarding that, we'll just rest on our brief. And yeah, thank you. Thank you, counsel. Mr. Dummy. Do you have any rebuttal, sir? No, you're all right. I think that the briefs lay this out. And again, I think the, the court and CW pointed this court towards the, the weight and consideration of the issue of best interest in a situation like this, where you have a demonstration of the efforts to correct the environment injurious. That is the path for this court to find as we would urge that the order terminating should be reversed if there's nothing else from the court. That's it. Okay, thank you, counsel. The court will take this matter under advisement be in recess.